Allen, J.
The sole question presented upon this appeal is as to the right of the appellant, in the absence of any objection to his personal fitness and qualifications, to receive from the surrogate of Albany county, letters testamentary as a co-executor with Mrs. Alexander, of the last will and testament of her husband, Andrew Alexander, deceased.
The right and power of a testator to provide for the due execution of his will, and the administration of his estate by a person not designated by name — that is literally “ named” by him — is the important question. Those who controvert the power of a testator to provide for the execution of his will by a delegation of the power of naming an executor to another, or in any way except by a direct appointment of an executor, rest their objections upon the supposed limited jurisdiction of the Surrogate’s Court, and more especially upon the rules of practice prescribed for that magistrate and the court over which he presides, by statute. In so doing, they make the tribunal, established as a means for giving effect to and carrying out the will, superior to and the means of defeating the will, and merely because the statute regulating the practice of the Surrogate’s Court has not, as it is ' thought, provided in terms for precisely the case; and some of its provisions are not applicable in all respects to it.
The will before us is very brief and very direct. The testator directs the payment of his debts out of his personal *349 estate; gives and devises the residue of his property, real and personal, to his wife; constitutes her the executrix of his will, and requests “ that such male friend as she may desire, shall be appointed with her as executor.” This is the entire will. It is a model instrument, but it is insisted that the last clause is invalid, and incapable of execution under the statutes of this State; and these proceedings were instituted to annul an appointment of a co-executor, made in pursuance of the request therein made.
The power of a testator over his estate, the care and management as well as the ultimate disposition and distribution of it, is unqualified and absolute, save only as restricted and limited by statute. The principal limitations have respect to the statutes'of uses and trusts, and the law against perpetuities and unauthorized accumulations. Within the limits and for the time allowed by law, a testator may commit the administration of his estate and the care of his property to such individuals or succession of individuals, selected by himself or to be designated by others, as he pleases. As he can dispose of the whole estate he may dispose of the naked custody and the management of it for a limited period; and the disposal, whether for a temporary purpose or otherwise, may be, except as prohibited by statute, absolute or provisional, and conditional, or as others designated by him may from time to time direct. The clause of the will providing for a joint administration of the estate by the wife and a male friend to be selected by her is not in conflict with any law operative upon or affecting the power of one competent to make a will. A will not inconsistent with law, gives the law for the custody and administration as well as the ultimate disposal of property. The sole difficulty suggested, and which by the Supreme Court was deemed insuperable, is that the surrogate cannot, by the strict letter of the law defining his powers, prescribing his duties and regulating the method of their performance, authenticate the powers of those to whom the testator would commit the execution of the will. But the authority of the *350 executors is derived from the will and not from the letters testamentary issued by the surrogate. The latter are but the authentic evidences of the power conferred by the will, and are founded upon the probate of that instrument. It is true that by the statutes of this State, executors are not permitted to exercise their powers except to a very limited extent, until proof of the will and the granting of letters testamentary. (2 R. S., 71, § 16.) But this does not affect the character cof the office or detract from the efficacy of the will as the source of .the power. An executor derives power from the will, but an administrator owes his to the appointment of the surrogate. (Lovelass on Wills, 382 and seq.) An executor can derive his office from a testamentary appointment only. (1 Williams on Executors, 209, and note [a]). The appointment may be either express or constructive; and it may be an immediate designation, or an appointment by others by authority of the will. Mr. Williams, in his treatise on the law of executors, says: “Although no executor be expressly nominated in the will by the word executor, yet if by any word or circumlocution the testator recommend or commit to one or more the charge and office, or the rights which appertain to an executor, it amounts to as much as the ordaining or constituting him or them to be executors.” (1 Williams on Ex., 209). The proposition is abundantly sustained by authority. The rule grows out of the fundamental principle universally recognized, that effect shall be given to the will of a testator when not contrary to the rules of law, as such will, and the intent of the author of it can be gathered from the whole instrument. (3 Redfield on Wills [2d ed.], 70; Carpenter v. Cameron, 7 Watts, 51.) Bayeaux v. Bayeaux (8 Paige, 333), is an example of an appointment of an executrix by implication, or according to the tenor. The chancellor adjudged every part of the will void for the reason that it was so inartificially drawn that it was impossible to ascertain the intention of the testator except as to the appointment of an executor. The testator did not in terms nominate his wife as executrix, *351 but by one clause of the will he appointed Jones C. Heartt as sole executor, in the event of the death of his wife, during the minority of his children, and from this and other clauses the chancellor concluded that the wife was by implication appointed executrix, and the will to that extent was established, and it was adjudged that the wife was entitled to letters testamentary. The courts have gone great lengths in giving-effect to wills, designating or authorizing the designation of executors. When an executor has been expressly named in the will, another executor 'has been admitted according to the tenor, to probate jointly with him who is named in the will as executor. (Grant v. Leslie, 3 Phillim., 116; Powell v. Stratford, cited id., 118.) When an executor was expressly nominated for general purposes, another person has been held to be executor according to the tenor for limited purposes. (Lynch v. Bellew, id., 424.) Executors may be appointed with separate functions, or to' succeed each other in the event that those first named shall die, become incapacitated, or unwilling longer to serve, or two persons may be appointed to act for a definite period or during the minority, or during the absence from the country of one appointed executor. (3 Redfield on Wills, 53; Anon., Dyer 4, a; Carte v. Carte, 3 Atk., 174, 180; Pemberton v. Coony, Cr. Eliz., 164; In the goods of Wilmot, 2 Robert, 579 ; In re goods of Langford, L. R. [1 P. and D.], 458 ; Brightman v. Keighley, Cr. Eliz., 43.) Different executors may be appointed for different States and countries. (Despard v. Churchill, 53 N. Y., 192.) These and numerous other cases that might be cited are only referred to as showing the great liberality which the courts have exercised in committing the execution of wills to those indicated in any manner by the will and in accordance with the intent of the testator, and so as not to disappoint his wishes, regardless of technicalities. The practice of the courts has been accommodated to the will, rather than tfte will made to give way to technical forms and modes of procedure. In England probate was granted as executor to persons chosen by the legatees pursuant to the will of the *352 testator directing them to appoint two persons to execute his testamentary bequests. (In re Cringan, 1 Hagg., 548.) By the ecclesiastical courts letters testamentary are granted to persons, as executors, who are named for that purpose by those appointed in the will with that power. (In re Ryder, 2 Sw. & Tr., 127; In re goods of Deichman, 3 Curteis’, 123 ; Jackson v. Paulet, 3 Rob., 334.) This practice is not in pursuance of any statute and does not grow out of the peculiar organization of those courts, or the forms and modes of procedure therein, but is exercised in the administration of the general laws of the realm, and to effectuate the wills of those competent to dispose of their property by will. The letters testamentary are granted in such cases as of legal right, and the rights of the claimants are adjudged upon the same principles as would control in the common law or equity courts of the realm should the same questions arise and be presented for adjudication in those courts. The validity of an appointment of an executor, under a delegation of power, has been affirmed by the courts in Delaware. By a will made in the State of Delaware, by a citizen of that State, the testator, in the event of the executor named by him relinquishing the trust, authorized the Orphan’s Court of the city and county of Philadelphia to name a suitable person as executor. Upon the relinquishment of the trust by the executor appointed by the will, the Orphan’s Court of Philadelphia named a person for the office; and letters testariientary were issued to the nominee by the register of Hew Castle county. The court held that he was the executor of the will, and that letters testamentary were properly issued to him, instead of letters of administration with the will annexed. That the power delegated to the executrix, to nominate a male friend to be a co-executor with her, is not in excess of the power of the testator over his estate, and its administration after his death, or to provide a suitable agency for the execution of his testamentary bequests, cannot well be controverted. It is not inhibited by any statute of the State; is recognized by *353 the common law; and is not violative of any principle of public policy.
It remains to inquire whether, by a reasonable interpretation of the statutes regulating the probate of wills and the procedure in Surrogates’ Courts, the powers of testators have been curtailed, and the jurisdiction and patronage of surrogates enlarged. The jurisdiction of the surrogate is declared-in general terms, and, so far as need to be referred to here, he has jurisdiction to hold a court: First. To take proof of wills of real and personal estáte in the cases prescribed by law. Second. To grant letters testamentary and of administration. (2 R. S., 220, § 1.) His jurisdiction to take proof of the will is conceded; and the power to grant letters testamentary is general, and not restricted by this- section to' a grant to any particular person or persons. He may grant them, unless restrained by some other statute, to executors expressly named in the will, or according to the tenor, or to any person entitled to' them by law, and the common law prevails, except as modified by statute. The last paragraph of the section, declaring that the powers conferred shall be exercised in the cases, and in the manner prescribed by the statutes of the State, does not limit or restrict the jurisdiction, or qualify the general terms of the statutes conferring the jurisdiction and defining the powers of the surrogate; The “cases” in which he has jurisdiction, and the circumstances upon which his jurisdiction depends in taking the proof of wills, are stated and declared by chapter 460 of the Laws of 1837. (4 Stat. at L., 486, § 1.) The right to grant letters testamentary follows the probate of the will. There was no defect in the jurisdiction of the surrogate of Albany county to take proof of the will óf the deceased and grant letters testamentary thereon. It was one of the “cases” in which he had jurisdiction. The surrogate must keep himself strictly within the limits of his jurisdiction and the powers conferred ; that is, he must have jurisdiction of the subject-matter and of the persons. His jurisdiction of the subject-matter depends upon the facts; and he can only acquire juris *354 diction of persons in the manner and by the process prescribed by law. That part of the act which declares that he shall exercise the powers conferred in the manner prescribed by law is not jurisdictional, unless it is restricted in its operation to the-manner of acquiring jurisdiction by citation or other process, or by proof of the facts upon which jurisdiction depends, as the case may be. As a regulation of practice, when the surrogate has jurisdiction, it is modal, and does not affect the powers of the magistrate. A substantial compliance with the statutes would satisfy the act; and the statutes regulating the mode of procedure, like all rules of practice, should be liberally construed in furtherance of justice, and to give effect to the legal intent of testators. Neither a literal or technical construction, inconsistent with the general purpose of the law, or well established principles, affecting the administration of estates and the operation and execution of wills, should be given to the statutes only affecting the mode of procedure in the Surrogate’s Court. Stress is laid upon the statute regulating the granting of letters testamentary, and which enacts that the surrogate who takes the proof of a will of personal estate, shall issue letters testamentary thereon “to the persons named therein as executors,” who are competent by law to serve as such, and who shall appear and qualify. (2 R. S., 69, § 1.) A strict reading of the statute would restrict the issuing of letters to those literally “ named,” that is designated by name as executors, to the exclusion of those who are described by their title of office, or in any other way by which they would be known, as well as those not named' as executors, but who were such by implication, or according to the tenor. To come within the statute, literally interpreted, the person must not only be “named,” but he must be named “ as executor.” But this is inconsistent with Bayeaux v. Bayeaux (supra). If any latitude is allowed in the interpretation of this statute, it should be read as authorizing the granting of letters testamentary to every person whose appointment or nomination as executor is testamentary in its *355 character, as that term has been heretofore used and applied, and as it is used at common law. This would include all deriving their power under the will, whether mediately or immediately. There is no reason for excluding those appointed under authority derived from the will, and admitting those not in terms nominated as executors, but whose nomination may be implied as within the intent of the testator as gathered from the will. Within a liberal and reasonable interpretation, and to give effect to the intention of the testator, the statute may be regarded as including within the convenient and generic term “ named as executor,” every one who can trace his authority to the will as its source. It is not to be inferred that the legislature intended by the phraseology of this section to effect a radical change in the law as to the persons entitled to letters testamentary as executors. ¡No such design is indicated in the statute itself, or in the report of the revisers by whom it was reported. On the contrary, the section was reported to the legislature as but embodying in terms what was implied by the Jaw then in force, which merely authorized the surrogate, after the probate of a will, “ to grant letters testamentary thereon.” (1 R. L., 445, § 3.) We should expect to find more explicit language and some reference to it in the report of the revisers, if so great a change in the law affecting wills, and the power of testators, as is claimed to have been effected, had been contemplated by the framers of the law or the legislature.
Whether there would be any practical difficulty in substantially complying with the rules of practice and procedure prescribed by the statute for the proof of wills, and granting letters testamentary thereon, if there should be no executor named in the will, or he who was appointed by the will should decline to serve, and the only person who could claim the office under the will should be one appointed pursuant to a power given by the will, it is not necessary to consider. My impression is, that effect could be given to every material requirement of the statute in such case; but that ques *356 tion is not before us. By the will of Mr. Alexander an executrix was appointed, qualified to act, and who could have been summoned to appear and qualify, as prescribed by statute. Had she failed to comply with the statute, she would have been deemed to have renounced the appointment, and letters of administration with the will annexed would have been granted to some suitable person. The executrix named could take no measures for the designation and commissioning of a co-executor until she had qualified as executrix. (Jackson and Gill v. Paulet, 2 Robertson’s Eccl. Rep., 344.) Mrs. Alexander was named in the will as executrix, and did take upon herself the office, and qualify as required by law. The statute was literally complied with by the issue of letters testamentary to her. Speculations as to difficulties that might arise in other cases need not be indulged in. As executrix, and after the granting of letters testamentary to her, she was empowered by the will to select a male friend to serve with her as co-executor. Unless the statutes referred to above, directing to whom letters testamentary shall be granted, forbid the granting of letters to a co-executor upon the nomination of the executor named in the will, they may be granted consistently with every other part of the statute. All that can be said of the other "provisions is, that they do not, in terms, provide for such an appointment. Every legal power and every legal trust conferred or created by will, that is, such as are not prohibited by or are not inconsistent with the law, may be executed by the executor. An executor may execute the will and carry out the testamentary intentions of the testator in such way, by such agencies, with such assistance, or such a division of labor and responsibility, as the testator may authorize. The will being legal in every part, every part may have full effect, including the power to the executrix to select a co-executor. To deprive her of this power might disappoint or substantially defeat the wishes of the testator. He may have foreseen that an intelligent and efficient aid and coadjutor would be necessary to the due execution of his will and the preserva *357 tion of his estate, and he preferred to leave the selection to her to naming one in his will, who might not be living at his death, or whom it might not be desirable to select at that time, by reason of some change in the relation or situation of the parties. To deprive her of this power may compel her to surrender the trust, and give to others the management and custody of an estate wholly hers after the payment of debts. That this is not unreasonable, or contrary to the policy of the law, is evident from the provision made in respect to the administration of estates of intestates. Had Mr. Alexander died intestate the widow would have been entitled to letters of administration; and she could have joined the appellant or any other person with her in the administration. (2 R. S., 74, §§ 1, 34.) When the testator has made her executrix and given her the like power the rule should be the same. The reasons assigned by the surrogate for denying the application to vacate the letters to the appellant fully sustain his conclusions.
If there are objections to the competency of the appellant those interested in the estate may apply for his removal as executor for that reason. This application was based wholly upon the alleged invalidity of the delegated power to the executrix to name a co-executor, and the want of power in the surrogate to grant letters testamentary to her nominee.
The judgment of the Supreme Court should be reversed, and the order of the surrogate affirmed.