PEOPLE ex rel. SCHARFF v. FROST, Warden of State Prison.

(Supreme Court, Appellate Division, First Department. December. 30, 1909.)

1. HABEAS CORPUS (§ 27*)—PROCEEDINGS REVIEWABLE—JURISDICTION TO IM-POSE SENTENCE.

The question of jurisdiction to impose sentence can properly be raised by a writ of habeas corpus.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 22; Dec. Dig. § 27.*]

2. SEDUCTION (§ 36*)—AVOIDANCE OF PUNISHMENT BY MARRYING COMPLAIN-ANT.

Under Pen. Code, § 285 (Pen. Law [Consol. Laws, c. 40] § 2176), provid-ing that the subsequent intermarriage of the parties is a bar to prose-cution under section 284 (Id. § 2175) for seduction under promise of mar-riage, the marriage must take place before conviction, and is not a bar to a prosecution which has already ripened into conviction, and so pun-ishment may be imposed on a plea of guilty, though after the plea on the same day accused married complainant.

[Ed. Note.—For other cases, see Seduction, Cent. Dig. § 62; Dec. Dig. § 36.*]

Clarke and Houghton, JJ., dissenting.

Appeal from Special Term, New York County.

Habeas corpus by the People, on the relation of Joseph Scharff, against Jesse D. Frost, agent and warden of the state prison at Sing Sing. From an order (116 N. Y. Supp. 946) dismissing the writ, re-lator appeals. Affirmed and relator remanded to custody.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGH-TON, and SCOTT, JJ.

Charles Goldzier, for appellant.
Robert S. Johnstone, for respondent.

SCOTT, J. This is an appeal from an order dismissing a writ of habeas corpus sued out to test the validity of a sentence imposed up-on the relator. The question is whether or not the Court of General Sessions had jurisdiction under the circumstances to impose sentence, or whether· it had been bereft of jurisdiction by reason of the facts hereinafter related. We are disposed' to think that this question can properly be raised by a writ of habeas corpus, and, as the learned dis-trict attorney makes no objection to this procedure, we shall proceed to treat the question as properly before us. The relator on April 24, 1908, pleaded guilty in the Court of General Sessions to an indictment charging him with the crime of having seduced under promise of· marriage one Elsie Frankel. On the same day, after his plea, he mar-ried the complainant with the knowledge of the court, which on May 6, 1908, suspended sentence upon him. Thereafter he and his wife lived together, and on February 7, 1907, for reasons not disclosed by the record, the suspension of sentence was revoked, and the relator was sentenced to imprisonment.

He now claims that, by reason of his marriage to the complaining witness, he became immune to punishment, and that the court was

without legal power or jurisdiction to pass sentence upon him. The prosecution was conducted under the Penal Code, the sections of which, relating to the crime of seduction under promise of marriage read as follows:

"A person who, under promise of marriage, seduces and has sexual intercourse with an unmarried female of previous chaste character, is punishable by imprisonment for not more than five years, or by a fine of not more than one thousand dollars or by both." Pen. Code, § 284 (Pen. Law [Consol. Laws, c. 40] § 2175).

"The subsequent intermarriage of the parties, or the lapse of two years after the commission of the offense before the finding of an indictment, is a bar to a prosecution for a violation of the last section." Pen. Code, § 285 (Pen. Law, § 2176).

"No conviction can be had for the offense specified in section two hundred and eighty-four, upon the testimony of the female seduced, unsupported by other evidence." Pen. Code, § 286 (Pen. Law, § 2177).

These sections are founded upon and are a substantial re-enactment of chapter 111, p. 148, Laws 1848, which read as follows:

"Any man, who shall under promise of marriage, seduce and have illicit connection with any unmarried female of previous chaste character, shall be guilty of a misdemeanor, and upon conviction shall be punished by imprisonment in a state prison not exceeding five years, or by imprisonment in a county jail not exceeding one year; provided that no conviction shall be had under the provisions of this act, on the testimony of the female seduced, unsupported by other evidence, nor unless indictment shall be found within two years after the commission of the offense; and provided further, that the subsequent marriage of the parties may be plead in bar of a conviction."

It is to be noted that the act of 1848 expressly provided that the subsequent marriage might be pleaded in bar of a conviction; and while, under our simplified criminal procedure special pleas have generally been abolished, yet the interposition of the fact of marriage as a reason why the prosecution should not proceed partakes of the nature of a special plea in bar. "By a plea in bar the defendant shows by matter extrinsic of the record, that the indictment is not maintainable." 1 Starkie's Crim. Pleadings, p. 316; 1 Colby's Crim. Law, p. 276.

Under the former practice a plea in bar could be interposed as matter of right only when the accused was arraigned and before he had plead "not guilty." After that he might withdraw his plea, and plead in bar only by leave of the court. People v. Allen, 43 N. Y. 28. Regarding the plea of subsequent marriage as analogous to a plea in bar under the former practice it would seem, that the fact upon which the special plea is founded must be one which exists before arraignment, and certainly before conviction. The subsequent marriage of a seducer with his victim is accepted by the law, for reasons of public policy, as a condonation of the crime against the people, to the extent that a prosecution therefore will not be pressed. It seems to be reasonably clear that to have this effect the marriage must take place before the prosecution has been proceeded with to conviction. If it takes place after it may properly be considered by the court with reference to the suspension of sentence, or by the executive with reference to a pardon, but cannot in any proper sense be said to bar a prosecution which has already ripened into conviction. It may be that it

would be to the advantage of betrayed women and their offspring that immunity should follow upon marriage, even if contracted after sentence, but that is a matter for legislation, and not for judicial construction. The language of the statute is even open to the construction that, in order to bar a prosecution, the marriage must take place before the indictment, just as the lapse of time after the commission of the crime, which also bars a prosecution, must have been completed before indictment. Our conclusion is that the Court of General Sessions had jurisdiction to impose sentence upon the relator.

Consequently the order dismissing the writ is affirmed, and the relator remanded to custody.

INGRAHAM and LAUGHLIN, JJ., concur.

CLARKE, J. Appeal from an order dismissing a writ of habeas corpus and remanding the prisoner. Relator was indicted for seduction under promise of marriage under section 284 of the Penal Code, which provides:

"A person who, under promise of marriage, seduces and has sexual intercourse with an unmarried female of previous chaste character, is punishable by imprisonment for not more than five years, or by a fine of not more than $1,000 or by both."

He pleaded guilty in the General Sessions on April 24, 1908, and was remanded for sentence. Between said day and May 6, 1908, he married the complainant with the approval and consent of the court, and on May 6th the judge presiding, being advised of said marriage, suspended sentence. It is alleged in the traverse to the writ that thereafter the defendant and his wife lived together.

On February 17, 1909, defendant was rearrested, the suspension of sentence was revoked, and he was sentenced to be imprisoned at state's prison at hard labor for a minimum term of 4 years and the maximum of 4 years and 6 months. He sued out this writ upon the ground, first, that the suspension of sentence was without jurisdiction, and in violation of law, and that he should have been unconditionally discharged; and, secondly, that the subsequent revocation of suspension and sentence was without jurisdiction and in violation of law, and that, therefore, he is now detained and imprisoned illegally. He bases his contention upon section 285 of the Penal Code, which provides that:

"The subsequent intermarriage of the parties, or the lapse of two years after the commission of the offense before the finding of an indictment, is a bar to a prosecution for a violation of the last section."

The argument of the appellant is that the provisions of sections 284 and 285 were intended to embody into the Penal Code the provisions of chapter 111 of the Laws of 1848, the final clause of which reads: "And provided further, that the subsequent marriage of the parties may be plead in bar of a conviction"; that, as the Penal Code substitutes "prosecution" for "conviction," this includes the whole criminal action, and that public policy, common decency, and justice, as well as a due regard for the welfare of the wronged woman, demand a construction which would prevent the sentencing of a defend-

ant for the seduction after a marriage, notwithstanding the fact that said marriage did not take place until after indictment and plea or verdict of guilty; that the condonation of the crime by subsequent marriage under the statute barred the prosecution as effectually as a pardon would have stayed it.

The real question at issue is the meaning of the words "is a bar to a prosecution for a violation of the last section." The district attorney claims that prosecution means indictment, and that the statute from which the section is derived contemplated a plea in bar which must be interposed at the time the prisoner was arraigned to. plead to the indictment. The appellant asks that it be interpreted as if it read "further prosecution," and claims that a locus pœnitentiæ exists up to the time of judgment.

Not much help can be derived from cases in other states because of the varying statutory provisions. In 25 Am. & Eng. Ency. 248, the rule is stated:

"In a great many jurisdictions the statutes provide that, if the seducer marries the woman seduced, any further prosecution against him for the seduction shall be barred, and that if such a marriage take place after indictment, but before conviction, the prosecution shall be discontinued."

In Indiana (State v. Otis, 135 Ind. 267, 34 N. E. 954, 21 L. R. A. 733) and in Michigan (People v. Gould, 70 Mich. 240, 38 N. W. 232, 14 Am. St. Rep. 493), independently of statute, it has been held that, as the promise had been kept, it would be against public policy and public decency to permit a prosecution to be carried forward in the courts of justice thereafter. It has been held under the California Penal Code (People v. Kehoe, 123 Cal. 224, 55 Pac. 911, 69 Am. St. Rep. 52, and People v. Samonset, 97 Cal. 448, 32 Pac. 520) that the marriage must take place prior to the finding of an indictment for or the filing of an information charging the seduction. The New Jersey statute provides that, if the man marry the female at any time before sentence, the same shall be suspended, and he shall be discharged from custody, and, if he marry the female after sentence, he shall be discharged from further imprisonment. State v. Brown, 64 N. J. Law, 414, 45 Atl. 800, affirmed 65 N. J. Law, 687, 51 Atl. 1109. In Connecticut the court held that a subsequent marriage is no defense, though it is a mitigating circumstance in determining the punishment. State v. Bierce, 27 Conn. 319.

The word "prosecution" is defined in 23 Am. & Eng. Enc. 268:

"To prosecute is to proceed against judicially. A prosecution is the act of conducting or waging a proceeding in court; the means adopted to bring a supposed offender to justice and punishment by due process of law. It is also defined as the institution or commencement and continuance of a criminal suit; the process of exhibiting formal charges against an offender before a legal tribunal, and pursuing them to final judgment on behalf of the state or government, as by indictment or information."

By the Penal Code of 1895 of Texas (article 26) a prosecution is defined to be the whole or any part of the procedure which the law provides for bringing offenders to justice. Ex parte Fagg, 38 Tex. Cr. R. 573, 44 S. W. 294, 40 L. R. A. 212. In State v. Hardenburgh, 2 N. J. Law, 339, prosecution is defined to ·be the following up or

carrying on of an action or suit already commenced until the remedy be attained. See, also, 32 Cyc. 727.

I do not agree with the contention of the district attorney that "prosecution" means "indictment." I think the safer interpretation of this statute to be that the prosecution referred to continues until .final judgment. 'If the plea of guilty and the suspension of sentence put an end to the prosecution, how was it possible to rearrest the defendant and sentence him by a final judgment to a term of years in state's prison? The very use of the words "suspension of sentence," from which we have heretofore held no appeal could lie (People v. Markham, 114 App. Div. 387, 99 'N. Y. Supp. 1092), implies what it says, a suspended prosecution and not a completed one. In People v. Fabian, 192 N. Y. 443, 85 N. E. 672, 18 L. R. A. (N. S.) 684, 127 Am. St. Rep. 917, the Court of Appeals held that the word "conviction" in the election law and the Constitution affecting the right of suffrage meant that conviction evidenced by judgment. That construction was in the interest of the defendant. It seems to me in the case at bar that we should hold that "prosecution" must continue to judgment, and so that the privilege given to the defendant to bar prosecution by marriage of the female must also continue until final judgment.

In Cheney v. Arnold, 15 N. Y. 353, 69 Am. Dec. 609, Denio, C. J., said:

"By an act passed in 1848 (Sess. Laws, c. 111) this seducing and having illicit intercourse with an unmarried female under promise of marriage is made a misdemeanor punishable by imprisonment, but the offense may be absolved by a subsequent marriage. The Legislature intended by this enactment to protect female purity, and not to deprive a wife of her lawful husband."

If marriage after indictment is a bar, of course that marriage is induced by fear of prosecution, and there is no logical reason why punishment should not be barred by such marriage up to the time of final judgment. The purpose of subsequent wiping out of the effect of the crime allowed by the statute is of course in the interest of the betrayed woman, and to prevent the bastardizing of the child. This is as important as the payment by the defendant of the debt to the state caused by his wrongdoing. I take the view in construing provisions of the Penal Code open to two constructions that words should be interpreted in that sense which will secure the interests of the defendant and accomplish the plain object of the statute, based upon the underlying reason therefor, rather than in a stricter sense to secure the punishment or disability of the defendant or the forfeiture of his property.

In my opinion the order appealed from should. be reversed, the writ sustained, and the prisoner discharged.

HOUGHTON, J., concurs.